# McDONALD, *Appellant,*
### *v.*
# CULLEN et ux, *Respondents.*
### (No. 90410, SC 24407)

559 P2d 506

M. Chapin Milbank of Schlegel, Milbank, Wheeler & Jarman, Salem, argued the cause and filed the briefs for appellant.

Ray W. Shaw of Webb and Shaw, Salem, argued the cause and filed a brief for respondents.

Before Holman, Presiding Justice, and Tongue, Howell, Linde, Mengler and Bradshaw, Justices.

BRADSHAW, J., pro tempore.

**BRADSHAW, J.,** pro tem.

This is a suit in equity for specific performance of an earnest money contract wherein the plaintiffs seek to compel defendants to sell land and the office building thereon to the plaintiffs.

The trial court by decree denied specific performance of the contract and dismissed plaintiffs' complaint.

Plaintiff Terry D. McDonald appeals from the trial court's decree. We affirm.

The plaintiff makes two assignments of error: First, that the trial court erred in finding that defendant Irene T. Cullen was not bound by the contract by reason of her not having signed the contract and that she was not estopped from denying obligation under the terms of the contract.

Secondly, plaintiff contends that the trial court erred in failing to interpret and resolve an ambiguous clause contained in the contract in favor of the plaintiffs.

Plaintiff's second assignment of error will be considered first, since disposition of that claimed error renders plaintiff's first assignment of error moot.

The defendant, Dr. Cullen, was a practicing chiropractor with offices located in Salem, Oregon in the building which is the subject property involved in this suit. Dr. Cullen held title to that property as tenants by the entirety with his wife Irene Cullen.

On September 30, 1974 Dr. Cullen alone signed a listing agreement for sale of the property with Ted Morrison Real Estate, including an asking price of $200,000. Dr. Cullen at that time and throughout the subsequent events dealt almost exclusively with Floyd McNall, a broker with Ted Morrison Real Estate.

Tom Burton, sales manager and salesman for Ted Morrison Real Estate, was contacted by plaintiff Dr.

McDonald relative to acquisition of property by the plaintiffs. The plaintiffs were all practicing orthodontists in the city of Salem. Burton was aware of the Cullen listing and he discussed the possible purchase of the Cullen property with the plaintiffs. As a result, in October 1974, the plaintiffs submitted an offer to purchase the property. This offer was not acceptable to defendants, who then proposed a counteroffer. As a result of these negotiations no agreement on the sales price was reached between the parties and the negotiations ceased at that time.

On November 24, 1974 Dr. Cullen became ill and underwent surgery and a cardiac arrest. On November 30, 1974, at the request of McNall, Mrs. Cullen signed an agreement to extend the listing as originally made by Dr. Cullen. During this time Dr. Cullen was still hospitalized.

The property remained available for sale through Ted Morrison Real Estate from October 1974 through April 1975.

On April 10, 1975, the plaintiffs submitted a new offer which was rejected as being an inadequate sales price. Dr. Cullen immediately made an oral counteroffer to sell at a price of $130,000. On April 16, 1975 the plaintiffs signed the earnest money contract as an offer to purchase for $130,000, agreeing to pay $3,000 down, secure conventional financing in the amount of $117,000 and that seller was to carry a note and second mortgage for $10,000. The provisions for the monthly payments and interest rate of that note and second mortgage were left blank with instructions that Dr. Cullen could fill in the amount to his satisfaction. After plaintiffs signed the offer Burton returned the document to his office to have McNall present the offer to defendants. A meeting was thereafter held in McNall's office with Dr. Cullen, Mr. McNall and Mr. Morrison being present. The evidence is conflicting as to whether or not Mrs. Cullen was present. The offer was discussed for approximately one and one-half

hours. As a result of this meeting certain additions were made to the document at Dr. Cullen's request. The amount of monthly payment and interest on the second mortgage were inserted. A handwritten clause was inserted immediately following the terms of financing. That clause was:

"Loan to be approved by April 27, 1975"

A provision for delivery of the premises to the plaintiffs on or before July 1, 1975 was also inserted. All such additions were initialed by Dr. Cullen and he signed the document as amended. McNall then delivered the document to Burton, who, in turn, submitted it to the plaintiffs.

The plaintiffs changed the date in the clause added by Dr. Cullen from April 27, 1975 to the date of May 2, 1975. The plaintiffs initialed this change and all other changes made by Dr. Cullen. The change in the date from April 27 to May 2 was thereafter approved and initialed by Dr. Cullen when presented to him by McNall.

On May 2, 1975 Burton submitted to plaintiffs a document entitled "Contingency Release." This document provided that the contingency of the loan approval clause had been met to the satisfaction of the purchasers and that the clause was thereby removed as a part of the contract. Burton had prepared this document and presented it to the plaintiffs without a request from either defendants or plaintiffs and without the knowledge of the defendants. The plaintiffs executed that document on May 2 and Burton returned it to his office and gave it to McNall so he could notify Dr. Cullen that the contingency had been removed. The document was never shown to Dr. Cullen, but was simply placed in a file in the real estate office.

On May 11 or 12, 1975 Burton called Dr. McDonald and advised him that Dr. Cullen was demanding to know what lending institution was to furnish the financing of the sale. Dr. McDonald advised Burton he was not required to have that information at that

time. Burton thereupon advised him that Dr. Cullen was going to advise plaintiffs that they no longer had a transaction due to not having obtained a loan approval.

By letter dated May 13, 1975 Dr. Cullen advised plaintiffs that because of their failure to obtain a loan approval he was rescinding the contract.

During all of the times mentioned, the plaintiffs and the defendants never met or had negotiations or discussions directly between themselves. Burton did not confer directly with the defendants and McNall did not confer directly with the plaintiffs.

Plaintiffs contend that the clause
"Loan to be approved by May 2, 1975"
should be construed in favor of the plaintiffs on the theory that the single and only effect of such a condition is to impose a time limit within which the plaintiffs could avoid the contract if they were unsuccessful in obtaining financing. Further, that such condition was successfully waived by the plaintiffs' unilateral signing of the contingency release.

The defendants claim that the clause required the plaintiffs to have a loan approval prior to May 2 as a condition precedent to performance of the contract by the defendants and that plaintiffs' failure to do so allows the defendants to avoid the contract.

■ A contract provision referring to purchasers' completing financing creates a condition precedent or subsequent depending primarily upon the intention of the parties as deduced from the language of the contract, the surrounding circumstances at the time the contract was executed and the purpose to be accomplished by the contract. 77 Am Jur 2d 251, Vendor and Purchaser § 66; Annotation, 81 ALR2d 1338, 1339.

The plaintiffs, in making the offer in the earnest money contract, made no mention of an avoidance clause in event of their failure to obtain financing. The

[ 40 ]

record is replete with evidence that plaintiffs were self-assured that they would have no problem in financing.

Dr. McDonald testified on direct examination as follows:

"I might also add that when I signed the offer of $130,000.00 it was my belief, at that time, that I was putting my name on a piece of paper to purchase a building for $130,000.00 and that there was no way I could get out of it. And I discussed this with my wife and Drs. Burke and Litchfield at great detail. I also discussed it with my banker and my accountant and it was my understanding when I signed that piece of paper, I had bought a building for $130,000.00 and there was no way out of it for me; nor did I intend there to be, * * *."

■ The total import of the discussion in McNall's office leading up to Dr. Cullen's requiring the clause in question to be inserted, is that Dr. Cullen wanted to be guaranteed that plaintiffs had financing approved by a date certain to the extent that would prevent a subsequent default by the plaintiffs due to their inability to obtain financing. Dr. Cullen's requirement that this clause be in the contract was reasonable and material to his interests.

Upon Burton's presenting the earnest money document to the plaintiffs with the changes inserted by Dr. Cullen there was discussion regarding the meaning of the clause in question. Burton did make reference to the fact that it was the plaintiffs' chance to find out if they could get financing by April 27 and if they could not they could still get out. However, plaintiffs, and particularly Dr. McDonald, insisted that they did not want to get out of the transaction and, more importantly, plaintiffs insisted that they could not do anything by the 27th and would have to have at least a week longer. Burton advised Dr. McDonald that he did not think Dr. Cullen would agree to such an extension. Nevertheless, at Dr. McDonald's insistence, the date April 27 was changed to May 2 and initialed by all the plaintiffs.

[ 41 ]

Dr. Cullen thereafter agreed to this change of date and also initialed the change.

All of the plaintiffs testified that the clause in question was required or wanted by Dr. Cullen and not themselves.

Dr. McDonald testified that when Burton called him earlier in the week prior to May 2 regarding the contingency release, he asked Burton to explain what it meant. Burton replied by referring to the contingency in the earnest money contract that the plaintiffs have the loan approval by May 2 and inquired if plaintiffs had a loan approval yet. Dr. McDonald then further testified in regard to this conversation with Burton as follows:

"* * * I assumed I had to do something by the 2nd of May because it was written in there. And he told me that he had this document that needed signing and that would I be willing to come in and sign it early in the week. I said no, because we agreed to the 2nd of May. I would like to have all the time possible."

■ Considering the language of the contract, the fact that the clause in question was added at the insistence of Dr. Cullen and considering all of the circumstances surrounding the execution of the contract and the purpose to be accomplished by the contract, the evidence conclusively proves that it was the intention of the parties and their mutual understanding that as a condition of performance by the defendants the plaintiffs were required to obtain a loan approval for the $117,000 prior to May 2, 1975, that is, a loan approved by a lending agency.

■ Plaintiffs further contend that even though the clause in question was a condition precedent to be met by the plaintiffs, the plaintiffs did comply with that condition and did have a loan approved by May 2, 1975. Considering the evidence presented by plaintiffs on this question and viewed in a light most favorable to the plaintiffs, such evidence fails to prove that plaintiffs' efforts resulted in an approval by a lending

agency of a loan. At best, such evidence indicates only that inquiries and proposals to lending agencies were made with indications by those agencies that probably financing could be arranged upon further decisions regarding details, and formal application. The phrase "loan to be approved" as used in this contract, if not synonymous with the term "loan commitment," certainly has the ordinary connotation of results above and beyond that which the plaintiffs had obtained on May 2.

Plaintiffs make the further claim that the preparation and presentment to the plaintiffs of the contingency release by Burton, as agent for defendants, led plaintiffs to believe that there was no need to rush through any loan commitment or approval, that plaintiffs were lulled into this state of mind by Burton's actions and statements relating to the contingency release document. Plaintiffs do not make it clear if they claim a waiver by defendants of the clause as a condition of the contract or that defendants are estopped to enforce that provision of the contract.

It may well be that statements and inferences made by Burton to the plaintiffs in presenting the contingency release gave the impression that Burton considered at that time that the clause in question was only for the benefit of plaintiffs in avoiding the contract if they had not obtained financing. Burton was acting without authority of the defendants, either express or implied. Burton's statements and inferences were solely his own interpretation and opinion as to the effect of the clause in question. He in no way indicated he was acting with authorization of the defendants nor did the plaintiffs inquire if his expressions were those of the defendants.

Even if Burton was acting as an agent of defendants, and plaintiffs were entitled to rely on his statements and opinion, the evidence proves that the plaintiffs did not, in fact, rely on Burton's statements or expressions to the extent of believing that they were

relieved by defendants from the obligation to obtain a loan approval by May 2.

■ The plaintiffs' failure to obtain a loan approval prior to May 2, 1975 constituted a failure to comply with a condition precedent to defendants being bound by the contract and, therefore, plaintiffs are not entitled to specific performance by either defendant.

This determination of the meaning and effect of the clause in the contract eliminates the necessity for this court to decide the question raised by plaintiffs' first assignment of error.

The decree of the trial court denying specific performance and dismissing the plaintiffs' complaint is affirmed.