**Stanley W. HANSON, et al., Appellants (C9–85–565), Plaintiffs (C5–85–790),**

**v.**

**Lawrence R. MOELLER, et al., Respondents,**

**Anoka Realty, Inc., Appellant (C5–85–790).**

**Nos. C9–85–565, C5–85–790.**

Court of Appeals of Minnesota.

Oct. 22, 1985.

William A. Erhart, Anoka, for appellants (C9–85–565), plaintiffs (C5–85–790).

Douglas J. Dehn, Anoka, for respondents.

William G. Hawkins, Coon Rapids, for appellant (C5–85–790).

Heard, considered and decided by POPOVICH, C.J., and FOLEY and LESLIE, JJ.

## OPINION

FOLEY, Judge.

This consolidated appeal involves a suit by buyers seeking specific performance of three purchase agreements and a suit by the real estate broker for its commission. The three parties each moved for summary judgment. The court granted the sellers summary judgment, ruling that the purchase agreements cannot be enforced because of the failure of a condition precedent and that the realtor did not earn its commission.

The buyers appealed and orally argued their case before this court. The realtor was not offered this privilege since it brought a separate appeal on this matter after failing to meet the deadline for filing a notice of review. For purposes of judicial economy, these appeals have been consolidated. We affirm.

## FACTS

Mary E. and Lawrence R. Moeller owned three rental properties in Anoka. On November 19, 1983, Mr. Moeller entered into a listing agreement for each property with Anoka Realty Incorporated through its president, Carl Youngquist.

On November 30, 1983, Mr. Moeller entered into three separate purchase agreements with Stanley and Kim Hanson. Anoka Realty agent Diane Omdahl had prepared the purchase agreements for the Hansons inserting the following financing contingency at Mr. Hanson's request:

Contingency on buyer obtaining a 2nd mortgage on the property at 515 Harrison by Dec. 30, 1983. Application to be made immediately.

Omdahl reviewed the agreements with Mr. Moeller who added one term to one of the agreements and then signed all three purchase agreements.

Omdahl referred the Hansons to mortgage broker Miller Mortgage Company where they applied for the mortgage on December 6, 1983. In mid-December, loan officer Julie Edwards told Mr. Hanson that there was no reason why he should not get the mortgage.

During December, Mr. Moeller inquired of Anoka Realty whether the Hansons had obtained a mortgage. Youngquist told him they did not have the mortgage but should have it by the 30th. On Saturday, December 31, Mr. Moeller called Youngquist again to learn if the mortgage had been obtained. Mr. Moeller stated that Youngquist called him back and said "Hanson's got the loan, I want you to sign this [Addendum] paper."

After learning the mortgage *should* be approved, Omdahl drafted an "Addendum to Three Purchase Agreements," stating, in part:

> Buyer has obtained a second mortgage on the property at 515 Harrison and here by [sic] agrees to the stated closing date of Jan. 31, 1983 [sic].

Mr. Hanson testified that Omdahl presented this agreement to him and stated that it removed the financing contingency. After the Hansons signed the addendum, it was presented to Mr. Moeller. He reviewed it and then decided not to sign it, thinking "if they got the loan it's a legal binding contract" and he did not need to sign the addendum.

On January 9, Mr. Moeller went to Mr. Hanson's home requesting an extension of the closing date. After learning Mr. Hanson did not want to extend the date, Moeller testified that he then asked Hanson if he had the loan and Hanson told him:

> No, I haven't got the loan. I should get it end of this week or first part of next week or I might not even get it at all.

Mr. Hanson stated that he actually said:

> I made a statement to him that I had a commitment from Miller Mortgage and that final closing on the mortgage was going to be sometime later that week or the next week from my conversation with Julie Edwards.

After the January 9 meeting, Mr. Moeller decided not to proceed with the closing. He contacted his attorney and Youngquist of Anoka Realty on January 12: "I told him [Youngquist] I wasn't going to go through with it because the contingency was not met because it was after the 30th." Youngquist then told Moeller that the Hansons received a written mortgage commitment on January 11. This was verified by loan officer Edwards in her affidavit.

Prior to closing, the attorneys of the parties corresponded regarding Mr. Moeller's position that the agreements were not enforceable. Youngquist maintained the position that the purchase agreements were valid and closing should occur on January 31, 1984 since the Hansons were "ready, willing and able to close." Closing was scheduled for January 31. Although the Hansons appeared, the Moellers did not.

The Hansons brought suit for damages or specific performance. Anoka Realty cross-claimed for its commission. All three parties moved for summary judgment. The trial court granted the Moellers' motion, ruling against the other two parties. The Hansons and Anoka Realty each brought separate appeals to this court. We have consolidated these appeals.

## ISSUE

Did the trial court properly grant sellers' motion for summary judgment?

a. Was there a genuine issue of material fact?

b. Did sellers waive performance of the condition?

c. Could the buyers alone waive performance of the condition?

d. Was the financing contingency ambiguous?

e. Is the realtor entitled to its commission?

## ANALYSIS

### Standard of Review

In reviewing the entry of summary judgment, this court must determine whether there are genuine issues of fact to be litigated and whether the trial court erred in applying the law. *ACLI International Commodity Services, Inc. v. Lindwall,* 347 N.W.2d 522, 524 (Minn.Ct.App.1984) (citing *Betlach v. Wayzata Condominium,* 281 N.W.2d 328, 330 (Minn.1979)).

### a. *Factual Issue*

All parties moved for summary judgment at the trial court level. Two of those parties now allege there are material fact issues that might demonstrate a waiver of the financing contingency and that there was an ambiguity in the financing contingency.

All facts pertinent to the legal issues here were not contested at the time the motions for summary judgment were made. Anoka Realty and the Hansons failed to demonstrate, at the time their motions for summary judgment were made, that there were specific facts in existence that demonstrated that Mr. Moeller waived performance of the financing contingency or that the financing contingency was ambiguous.

> [T]he rule in Minnesota is that a party cannot rely upon general statements of fact to oppose a motion for summary judgment. Instead, the nonmoving party must demonstrate at the time the motion is made that specific facts are in existence which create a genuine issue for trial.

*Moundsview Independent School District No. 621 v. Buetow & Associates, Inc.,* 253 N.W.2d 836, 838 (Minn.1977). In addition:

> A party cannot create a fact issue by claiming that the facts which may be developed on cross-examination at the time of trial will permit him to reach the trier of facts.

*Borom v. City of St. Paul,* 289 Minn. 371, 374–75, 184 N.W.2d 595, 597 (1971).

All parties agree the purchase agreement contains a financing contingency that constitutes a condition precedent which must be performed before the contract becomes enforceable. *See The Lake Co. v. Molan,* 269 Minn. 490, 131 N.W.2d 734 (1964). There is no dispute that the written commitment of mortgage was not received by December 30, 1983. No one contests Mr. Moeller's statements that he contacted the president of Anoka Realty after first learning of the failure of the contingency and told him the deal was off. No one disputes that Mr. Moeller also contacted his lawyer. No one contests that the lawyers of the buyers and sellers corresponded on the issue of whether Mr. Moeller had a valid stance in refusing to perform the purchase agreements. Mr. Hanson did not deny receiving a copy of a letter from his lawyer protesting Mr. Moeller's position that the failure to meet the financing contingency prevented the enforcement of the agreements.

■ Anoka Realty and the Hansons cannot now complain, upon defeat of their own motions for summary judgment, that a trial will develop facts they could not aver at the time they made their motions. At the time the motions were presented, all parties agreed there were no genuine issues of material fact.

### b. *Waiver by Seller*

■ The Hansons argue that Mr. Moeller waived performance of the condition precedent by his actions from December 30, 1983 to January 9, 1984. They cite the following language in *Malmquist v. Peterson,* 149 Minn. 223, 183 N.W. 138 (1921) to support their position:

> [I]f, after default in performance of a contract within the time stipulated, the party entitled to take advantage of the default, *with knowledge of the facts,* treats the contract as still in force or deals with the other party in a matter consistent only with a purpose on his part to regard the contract as still subsisting and not terminated by the default, he waives the default.

*Id.* at 226, 183 N.W. at 140 (emphasis added).

Anoka Realty also argues Mr. Moeller's conduct after December 30 constituted a waiver of the condition:

> [W]aiver may be found where a party continues to exercise rights under a contract even though *he knows a condition has not occurred* or cannot be performed.

*Appollo v. Reynolds,* 364 N.W.2d 422, 424 (Minn.App.Ct.1985) (emphasis added).

A review of Mr. Moeller's actions shows no ambiguity on his part indicating he did not expect the financing contingency to be met. Anoka Realty always knew Mr. Moeller insisted the Hansons get a mortgage by December 30. Youngquist, president of Anoka Realty, stated that Mr. Moeller had contacted him about eight times in December and on about three or four occasions

asked him if the Hansons had obtained their mortgage yet. On December 31, the day after the contingency was to have been met, Mr. Moeller called Youngquist to see if the Hansons had obtained their mortgage. Youngquist called agent Omdahl, the Hansons' contact with Anoka Realty, and learned that a few papers were outstanding. Youngquist, however, called Mr. Moeller back and told him they had the loan. Mr. Moeller subsequently reviewed the addendum signed by the Hansons. The addendum stated the Hansons had obtained a second mortgage on their property. Mr. Moeller testified that all this led him to believe the Hansons had obtained a written commitment of mortgage by December 30.

On December 30, loan officer Edwards, agent Omdahl and Anoka Realty president Youngquist all knew the paperwork was not complete and there was no binding commitment. Mr. Hanson knew the commitment had not yet come but had been told there should be "no problem," so he signed the addendum. Edwards stated in her affidavit that the written commitment of mortgage, made by a specific bank to fund the Hansons' mortgage, was not obtained until January 11, 1984. Until that time, she stated, there was a possibility that the mortgage might not be granted. Only Mr. Moeller did not know these facts before January 9.

The testimony of both Mr. Hanson and Mr. Moeller indicates that on January 9, 1984, Mr. Moeller asked Mr. Hanson for an extension of closing *and then* asked whether Mr. Hanson had obtained the mortgage. Mr. Moeller testified that when Mr. Hanson responded that it was forthcoming, he realized the contingency had not been met on December 30, as he had been led to believe. The parties have averred no facts contesting Mr. Moeller's statements that once he learned this fact he did not pursue any

conversation regarding closing dates or engage in other activity that might indicate he waived the default of this condition precedent. Instead, he called Anoka Realty president Youngquist and told him the deal was off because he had been lied to—the contingency had not been met in time.

It is only the Hansons' argument that Mr. Moeller's requested extension of the closing date constituted a waiver. Anoka Realty, as the Hansons, failed to demonstrate at the time the motions for summary judgment were made that there were specific facts in existence that refuted Mr. Moeller's testimony that he did not know and had no way of knowing the financing contingency had not been met on December 30. Instead, the testimony is consistent that Youngquist, Omdahl and the Hansons (through the execution of the addendum [1]) all told Mr. Moeller on or about December 31 that the Hansons had obtained a mortgage commitment. Since the unrefuted facts show Mr. Moeller did not know the financing contingency had not been met when he asked for an extension of the closing date, he could not waive this condition precedent according to *Malmquist* or *Appollo*.

### c. *Adequacy of Buyers' Waiver*

■ Anoka Realty also argues the buyers' waiver of the contingency, through execution of the addendum, was all that was required to make the agreements enforceable since the contingency was "logically" only for their benefit. Anoka Realty cites numerous cases in other jurisdictions which hold that a financing contingency was for the benefit of buyers and thus could be waived by them. A party may unilaterally waive a condition precedent if it was intended solely for his benefit and protection. *Miracle Construction Co. v.*

---

1. The real estate agent drafted the "Addendum to Three Purchase Agreements" supposedly on behalf of both the buyers and sellers, stating that the Hansons *had obtained* the mortgage by December 30. She also apparently told the Hansons their signature on the addendum removed the financing contingency from the three

purchase agreements. Since the real estate agent does not claim to be admitted to practice law, the Hansons should not have relied on her interpretations of the apparent legal consequences of signing the addendum and we frown on any such representation that may have been made.

*Miller,* 251 Minn. 320, 326, 87 N.W.2d 665, 670 (1958).

■ Here, the evidence is unrefuted. Mr. Hanson, Mr. Moeller and agent Omdahl all agreed that the financing contingency benefitted both the buyers and sellers. The parties agreed that this contingency was a condition precedent. A condition precedent is one which is to be performed before the agreement of the parties becomes operative. *See The Lake Co.* at 498, 131 N.W.2d at 740. Although the Hansons may have waived this condition precedent by executing the addendum, the Moellers would also have to waive this condition precedent before an enforceable contract could come into existence here. *See Miracle Construction Co.,* 251 Minn. at 326, 87 N.W.2d at 670.

#### d. Contract Ambiguity

■ Anoka Realty, also requests a trial on the issue of the parties' intent with respect to the contract language of the financing contingency. There is no need to determine the intent of the parties.

> Whether a contract is ambiguous or not and therefore open to construction presents, in the first instance, a question for legal determination by the trial court. The trial court in this case determined that the contract was not ambiguous * *. On appeal, it is for us to determine whether the trial court was correct in holding that there was no ambiguity and also whether the proper interpretation was given to the language used by the parties.

> A contract is ambiguous if it is reasonably susceptible to more than one construction.

*Telex Corp. v. Data Products Corp.,* 271 Minn. 288, 291, 135 N.W.2d 681, 684–85 (1965) (quoting *Employers Liability Assurance Corp. v. Morse,* 261 Minn. 259, 263, 111 N.W.2d 620, 624 (1961).

Here, the trial court found no ambiguity and interpreted the contingency as follows:

> The condition was placed in the agreement not only to give the buyers an out if they could not obtain financing but also to give the sellers an out if financing was not guaranteed by December 30, 1983. For the condition to have any meaning for the sellers, it must be construed as requiring the buyers to obtain an *enforceable* loan commitment by December 30, 1983. The verbal assurances given by Miller Mortgage did not amount to an enforceable commitment and therefore did not satisfy the condition. *McDonald v. Cullen,* [277 Or. 35] 559 P.2d 506, 510 (Or.1977).

The trial court did not err in its interpretation and construction of the contract.

#### e. Commission Earned

Anoka Realty asserts it earned a commission for procuring an enforceable contract or in the alternative, it is entitled to a commission because it procured a buyer who was ready, willing and able to perform.

Anoka Realty cites many cases involving oral agreements for a commission. We must limit our analysis to the particular written contract of the broker and seller.

> A broker is entitled to his commission after he has performed everything that he undertook to perform, and this necessarily depends upon the agreement of the parties.

*Spartz v. Rimnac,* 296 Minn. 390, 393, 208 N.W.2d 764, 767 (1973). The listing agreements entered into by Mr. Moeller and Anoka Realty each state:

> I hereby agree to pay you a brokerage fee of 7% of the purchase or exchange price thereof, *upon sale, contract for sale, or exchange of said real estate* made while this agreement remains in force, whether such sale or exchange be made by yourselves or by myself or by any agent or broker or whether at the price and upon the terms stated below, or at a different price, or upon other terms accepted by me. (emphasis added)

■ Here, we would have to find a "contract for sale," to entitle Anoka Realty to a commission. A "contract for sale" must be a valid, enforceable contract:

It is well-settled law that to be entitled to a commission upon procuring a sale or exchange of real property, a broker must secure the execution of a valid, binding, enforceable contract. Where a broker is entitled to his commission upon the sale or contract for sale, the broker is required to produce a binding contract for sale.

*Spartz* at 393–94, 208 N.W.2d at 767 (citations omitted). As discussed above, the failure to satisfy the condition precedent prevented an enforceable contract from coming into existence. Thus, Anoka Realty is not entitled to a commission.

Anoka Realty asserts that *Spartz* requires a different result here because in *Spartz,* the realtor was entitled to a commission despite the buyer's failure to meet a rezoning contingency. *Spartz* is distinguishable because it involved a "voidable contract" which is "valid and binding until it is avoided by the party entitled to avoid it." *Id.* The Minnesota Supreme Court therefore held:

> [T]he purchaser had the power to avoid the contract if he failed to secure a rezoning of the property. However, the purchaser chose to ratify the contract when he sought to close the transaction without the rezoning. * * * [W]hen the purchaser tendered the mortgage, the real estate taxes, and the balance of the downpayment in order to close the transaction, he ratified the contract for sale and waived his right to avoid it. The contract for sale then became binding and enforceable against the purchaser, and plaintiff became entitled to his commission.

*Id.* at 394–95, 208 N.W.2d at 767. The rezoning contingency was for the sole benefit of the purchaser in *Spartz,* therefore, the purchaser alone could effectively waive its performance and thus cause an enforceable contract to come into existence.

Here, both parties agree the condition precedent, a financing contingency, benefitted both parties. Thus, both parties would have to waive its performance for a valid agreement to come into existence:

When a contractual duty is subject to a condition precedent, whether that condition is express, implied, or constructive, there is no duty of immediate performance and there can be no breach of that contractual duty by mere nonperformance, unless the condition precedent is either performed or excused. If such a condition precedent is neither performed or excused within the time that is required, such failure now makes it impossible for a breach of contract to occur. Nonperformance of the primary contractual duty can now never operate as a breach of it; and no remedy for enforcement will ever be available. Therefore, the contractual duty must be regarded as discharged.

A. Corbin, 6 Corbin on Contracts § 1252 at 2 (West 1962).

Since the sellers did not waive performance of the financing contingency, Anoka Realty failed to secure the execution of a valid, binding and enforceable contract which would have entitled it to a commission.

### DECISION

The trial court properly granted the sellers summary judgment, dismissing buyers' action for specific performance and realtor's action for a commission.

Affirmed.