Argued and submitted May 16, affirmed December 12, 2007

Scot BURGESS
and Rex Gibson,
*Plaintiffs-Respondents,*

*v.*

NORTH BEND SCHOOL DISTRICT #13,
a municipal corporation of the State of Oregon,
*Defendant.*

NORTH BEND SCHOOL DISTRICT #13,
a municipal corporation of the State of Oregon,
*Third-Party Plaintiff,*

*v.*

CIRCLE H, LLC,
*Third-Party Defendant-Appellant.*

Coos County Circuit Court
05CV0277; A132068

173 P3d 1271

Terence J. Hammons argued the cause for appellant. With him on the briefs was Hammons & Mills.

William A. McDaniel argued the cause for respondents. With him on the brief was Foss, Whitty, Littlefield, McDaniel & Bodkin, LLP.

Before Armstrong, Presiding Judge, and Haselton* and Rosenblum, Judges.

ARMSTRONG, P. J.

---

### ARMSTRONG, P. J.

Plaintiffs brought an action for specific performance of a contract for the sale of commercial real estate. A competing purchaser of the property appeared in the action to oppose specific performance of plaintiffs' contract. The trial court entered a judgment that ordered the seller to perform the contract with plaintiffs. The competing purchaser appeals, contending that the court erred in granting specific performance because plaintiffs materially breached the contract and also failed to establish that they were ready, willing, and able to perform it. We affirm.

We review the record in equitable proceedings *de novo*, and state the pertinent facts from the record. ORS 19.415(3). On March 15, 2005, plaintiffs Burgess and Gibson entered into an earnest money agreement with defendant North Bend School District #13 to purchase the district's Bangor School property in North Bend. Three days later, on March 18, defendant accepted a backup offer from third-party defendant Circle H, LLC (Circle H), for the same property.

The earnest money agreement between plaintiffs and defendant contained a loan-contingency clause, which provides, in part:

"3.  BUYER REPRESENTATIONS/LOAN CONTIN-GENCY:  As of the date of signing this Agreement, Buyer has sufficient funds available to close this transaction in accordance with the terms proposed herein, and is not relying on any contingent source of funds (e.g. from loans, gifts, sale or closing of property, 401K disbursements, etc.), unless otherwise disclosed in this Agreement. IF A NEW LOAN IS REQUIRED, THIS TRANSACTION IS SUBJECT TO BUYER AND PROPERTY QUALIFYING FOR THE LOAN AND THE LENDER'S APPRAISAL BEING NOT LESS THAN THE PURCHASE PRICE. Buyer agrees to make written loan application not later than 10 business days (three (3) if not filled in) after the date Seller and Buyer have signed this Agreement, and thereafter complete necessary papers, and exert best efforts, including payment of all application, appraisal and processing fees, in order to

procure the loan. This contingency is solely for Buyer's benefit and may be waived by Buyer in writing."

The agreement also contained a "time is of the essence" clause, which provides, in part:

"15. CLOSING: TIME IS OF THE ESSENCE. Closing shall occur on a date mutually agreed upon by Seller and Buyer, but in no event later than 6/31/05 [*sic*] ('the Closing Deadline')."

Plaintiffs sought financing from Umpqua Bank for their purchase of the property. Apparently, Umpqua Bank does not use written applications for commercial loans but, rather, gathers information from applicants in the form of financial statements, tax returns, and the like. Burgess had previously submitted his financial information to Umpqua Bank (as a result of another, unrelated loan application), but Gibson did not submit his financial information to the bank for a loan for the Bangor School purchase until April 8, 2005, which was after the 10-day period specified in the loan-contingency clause. Umpqua Bank denied plaintiffs' loan application on April 20 in a letter stating that, although plaintiffs qualified for the loan, the bank considered the project to be too speculative without more information about plaintiffs' plan to develop the property. The next day, April 21, defendant terminated the agreement with plaintiffs, citing plaintiffs' failure to obtain financing for their purchase of the Bangor School property. Defendant thereafter took steps to sell the property to Circle H pursuant to its backup agreement.

After defendant terminated the agreement with plaintiffs, plaintiffs nevertheless sought financing for the purchase of the Bangor School property from both Sterling Savings Bank and Key Bank. Sterling Savings Bank issued a letter to plaintiffs on June 14, 2005, in which it committed to make a $750,000 loan to plaintiffs to purchase the property, subject to plaintiffs satisfying certain loan conditions. Key Bank also indicated in a December 15, 2005, letter that it was willing to finance plaintiffs' purchase of the property, subject to conditions.

Plaintiffs brought this action against defendant for specific performance of their agreement to purchase the property. Defendant, in turn, filed a third-party complaint against Circle H that sought to establish which of the two sales contracts it was required to perform.

At trial, the court found that, while plaintiffs had breached the agreement by not submitting a completed written loan application to Umpqua Bank within the 10-day period specified in the loan-contingency clause, that breach was not material and therefore did not excuse defendant from performing the agreement. The trial court also found that plaintiffs were ready, willing, and able to perform under the agreement and therefore ordered defendant to perform the agreement to sell the Bangor School property to plaintiffs. Circle H appeals from the judgment, arguing that plaintiffs were not entitled to specific performance of the agreement because they materially breached it and failed to establish that they were ready, willing, and able to perform it.

We begin with Circle H's argument that plaintiffs' breach of the agreement was material and, therefore, that plaintiffs are not entitled to specific performance. Because the trial court found that plaintiffs had breached the agreement by not timely completing a written loan application, and we do not understand plaintiffs to challenge that finding on appeal, we assume for purposes of this appeal that plaintiffs breached the agreement by failing to submit a timely loan application. Therefore, we must determine whether the breach was material. If it was, then the trial court erred in enforcing the contract. *See Reeder v. Kay*, 282 Or 191, 194, 577 P2d 925 (1978) ("An immaterial breach by one party does not operate to discharge an obligation by the other party to perform."); *Bisio v. Madenwald*, 33 Or App 325, 331, 576 P2d 801 (1978). *See also Restatement (Second) of Contracts* §§ 237, 242 (1981).

Whether a contractual breach is material is a question of fact. *Wasserburger v. Amer. Sci. Chem.*, 267 Or 77, 82, 514 P2d 1097 (1973). We have held that "[a] breach is material if it goes to the very substance of the contract and defeats the object of the parties in entering into the contract." *Bisio,*

33 Or App at 331. In *Pollock v. D. R. Horton, Inc. - Portland,* 190 Or App 1, 17, 77 P3d 1120 (2003), we applied the criteria in *Restatement (Second) of Contracts* § 241 (1981) to make that determination. Those criteria are:

"(a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;

"(b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;

"(c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;

"(d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;

"(e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing."

█ █  Application of the criteria in *Restatement* § 241 in this case leads us to agree with the trial court that plaintiffs did not materially breach the agreement with defendant. The failure of plaintiffs to submit a written loan application within 10 business days did not deprive defendant of any contractual benefit because the loan-contingency clause that included the 10-day requirement was solely for plaintiffs' benefit. The benefit for which defendant contracted, the timely sale of the property, would have been satisfied if the funds to complete the purchase were available by the closing date, regardless of when plaintiffs completed their loan application.[1] Time is of the essence in the agreement, but plaintiffs had ample time before the closing date to seek and obtain a loan and thereby avoid any effect of their breach of the loan application requirement. Finally, nothing suggests that plaintiffs acted other than in good faith throughout the transaction.

---

[1] Timely submission of the loan application presumably would simply have led to an earlier rejection by Umpqua Bank of plaintiffs' loan application. Significantly, however, and contrary to the asserted basis for defendant's termination of its contract with plaintiffs, the rejection by Umpqua Bank of the requested loan did not, itself, provide a basis for defendant to terminate or repudiate the contract.

■     Circle H argues that plaintiffs' failure to submit a timely loan application was nevertheless a material breach of the agreement, relying principally on *McDonald v. Cullen*, 277 Or 35, 559 P2d 506 (1977). In *McDonald*, the court held that a contractual clause that required a real property purchaser to obtain financing by a certain date was a clause that was material to both parties and, therefore, that a breach of that clause was a material breach. 277 Or at 41-44. This case is easily distinguishable from *McDonald*. Here, if plaintiffs needed financing, the agreement required them to submit a written loan application within 10 business days of entering the agreement. The agreement did not require plaintiffs to obtain financing, much less by a certain date. Furthermore, the agreement specifically states that the clause is solely for plaintiffs' benefit and can be waived by plaintiffs, in writing, at any time. Nonperformance by a party of a condition included in a contract for the party's sole benefit will not excuse performance of the contract by the other party. *See Usinger v. Campbell*, 280 Or 751, 754 n 1, 572 P2d 1018 (1977). *See also* 3A Corbin, Contracts § 761, 516-17 (1960). Plaintiffs' breach was not material and did not excuse defendant from performing its obligations under the parties' agreement.

■■     Specific performance of a contract is an appropriate remedy if the party seeking specific performance establishes that it is ready, willing, and able to perform the contract. *See, e.g., Voin v. Szabo*, 139 Or App 590, 594, 913 P2d 717 (1996) (more is required than speculation that, but for a defendant's repudiation, a contract might have been performed). The trial court found that plaintiffs were ready, willing, and able to perform their agreement with defendant to purchase the Bangor School property. Although Burgess testified that both he and Gibson had the financial ability to pay the purchase price for the property without obtaining a loan for the purchase and they had loan commitments from two separate banks to finance the purchase, Circle H nevertheless argues that plaintiffs failed to establish at trial that they were ready, willing, and able to complete the purchase. It relies on our decision in *Rockwell v. Nelson*, 157 Or App 269, 970 P2d 666 (1998), as support for its position.

In *Rockwell*, the buyers sought specific performance of a land sale contract. At trial, buyers submitted evidence

that purportedly established that they had received approval for a loan to purchase the property. Significantly, however, no documents about the loan were introduced at trial, and the mortgage broker who had ostensibly obtained the loan did not testify. On that record, neither the trial court nor our court were persuaded that the buyers, in fact, had the loan that they needed to fund the purchase of the property.

Here, in contrast, plaintiffs submitted a letter from Sterling Savings Bank in which it committed to loan plaintiffs $750,000 to purchase the property. *See Thompson v. Parke*, 40 Or App 359, 364, 595 P2d 499 (1979) (buyers who had loan commitment from credit union were ready, willing, and able to pay cash price). Circle H argues, however, that, because the loan commitment from Sterling contained conditions and plaintiffs did not establish that all of the conditions had been or could be satisfied, the loan commitment was insufficient to establish that plaintiffs were ready, willing, and able to purchase the property.

We disagree. Burgess testified that he and Gibson had personal resources sufficient to fund the purchase without the need to obtain a loan. Circle H questions that, but it made no effort at trial to challenge or undercut that testimony. Burgess explained that he and Gibson preferred to fund the purchase with a loan, which is why they sought to obtain one. We are persuaded, on this record, that plaintiffs were ready, willing, and able to purchase the property whether or not they obtained a loan for the purchase. The fact that both Sterling Savings and Key Bank had made loan commitments to plaintiffs for the purchase, albeit with conditions, further supports our finding on plaintiffs' ability to perform the contract to purchase the Bangor School property.

Plaintiffs did not materially breach their agreement with defendant, and they showed that they were ready, willing, and able to perform their obligations under it. Therefore, the trial court did not err in ordering defendant to specifically perform the parties' agreement.

Affirmed.